Good morning and may it please the court. My name is Guy Weinstein and I represent the petitioner Eduardo Adame-Hernandez. This is my first time arguing before the Eighth Circuit Court of Appeals and I'm honored to be here. Welcome. This matter comes before the court after the Board of Immigration Appeals concurred with the immigration judge in pre-termitting petitioner's application for cancellation or removal for non-legal permanent residents. It's our position that the Board of Immigration Appeals erred in finding that Nebraska's false reporting statute is categorically a crime involving moral turpitude. The second position that we want to address today in light of the decision in Perieta v. Barr that the Board of Immigration Appeals should remand with instructions to give the petitioner an opportunity to clear the record concerning his 2007 false reporting conviction. The most recent line of case... Just so we're clear, we're only talking about one of the two convictions in this case, right? Correct, your honor. Yeah, okay. So the 2007 is the one that we're not concerned about in this case, right? It's possible that we are concerned about it depending on the analysis of the false reporting statute because it's possible that if a subsection was violated that it's not a crime involving moral turpitude, that he would only have one conviction for a crime involving moral turpitude and therefore the petty offense exception would apply in this case. But first we need to have a thoughtful analysis of the false reporting statute in Nebraska to decide if it is categorically a crime involving moral turpitude or not. Because if it's not a crime, a categorical crime involving moral turpitude, then that second position is moot. The most recent line of cases concerning CIMT, or crime involving moral turpitude analysis, starts with the categorical approach. And I like to refer to that as the realistic probability approach. We take a look at the Nebraska statute and all of its elements and see if there's a realistic probability that one could violate this statute and violate the statute without committing an act that's base, vile, or depraved, or contrary to the accepted rules of morality and the duties owed between persons or society in general. If we look at the statute and realize that there's multiple ways that one could violate the statute, it's considered a divisible statute and therefore we need to go forward with the modified categorical approach. It's our position that the Nebraska false reporting statute is not categorically a crime involving moral turpitude. And what I believe the government has wrong and the BIA has wrong here is that no one did a thoughtful analysis of each subsection of the Nebraska false reporting statute to decide if one could violate the statute without committing a crime involving moral turpitude. We go forward with all the subsections of the false reporting statute and the one subsection we're concerned about here is the furnishing false information to a peace officer with an intent to instigate or impede a criminal matter. It's not disputed that that was the subsection that the petitioner violated in the 2009 conviction for false reporting. However, we need to decide if categorically this false reporting statute is a crime involving moral turpitude or not because it looks to me... So why doesn't it count? Why doesn't a conviction under 1A count? It does not count because I believe that there's an important distinction that we need to make between fraud, different types of fraud. I don't believe all fraud is created equal. The line of cases that the government cites in their brief have to do with deceiving and fraud. However, deceiving and fraud in their cases, everyone is gaining some type of benefit for lying. I'm not saying that you're honest if you're convicted of the false reporting, but you're not gaining any pecuniary benefit. You're not hurting others. For example, the Viatoro v. Holder case that the government cites refers to an Iowa statute for records tampering. In that statute, it includes an intent to injure someone. That is absent in the false reporting statute. What's your realistic scenario in which you think a person violates this statute without committing a crime involving moral turpitude? Thank you, Your Honor. I believe that the case at hand here is very analogous to the Bobadilla decision by the 8th Circuit in which you provide a false name to a police officer not because you want to injure someone, but because maybe you're scared. I know a lot of people, a lot of immigrants in the United States are afraid. They want to go home to their wife and kids at night. They may have been dishonest in providing a false name, but they were just hoping to go home to their wife and kids at night. I don't believe that that's morally depraved or a vile act. I believe that there's a realistic probability in the false reporting statute here in Nebraska that one could violate that statute without committing a crime involving moral turpitude. I think that's the question that we need to address today. You can also look at the Kawashima v. Holder case, and that's a tax evasion case that the government cites here. I think that's distinguishable as well because clearly you're gaining a pecuniary benefit at the expense of the government. None of that type of reward or injury is occurring in all circumstances of the Nebraska statute for false reporting. Most importantly, I believe that this court's precedential decision in Bobadilla is the same realistic probability standard or analysis that we need to have here today concerning this statute because it's involving an attempt to mislead the police, not necessarily deceive them for a pecuniary benefit or deceive them to injure another person. One thing that I believe that the BI has wrong here and the immigration judge has wrong here is that clearly this is a divisible statute, and therefore a thoughtful analysis needs to be made for each subsection of the statute. I don't see any of that analysis in their decisions, and I think that's an important analysis that needs to be made with this case specifically. Can I turn to a different issue? I can ask the government counsel about this as well, but as I understand the government's position in this case, they're really only arguing one offense that disqualifies, not two, which then implicates the petty offense exception. You didn't really argue that in your brief, at least your opening brief, and the government just sort of throws it out in a footnote in their brief. Now, it is discussed in more detail. What's your position about the petty offense exception? As I understand, the statute says if the offense carries a punishment of more than one year, and this is exactly one year is the maximum sentence. What's your position on that statute or on that exception? In this case, it's kind of interesting because there's two convictions, and I guess if the statute categorically a crime involving moral turpitude, then he would have two convictions for a crime involving moral turpitude, so the petty offense exception wouldn't apply to this case. However, if this court deems that you can violate the statute with non-moral turpitude conduct, then a thoughtful analysis needs to be made about which subsection the petitioner violated, because if he violates a subsection that's not a crime involving moral turpitude, then he would clearly only have one conviction that's a crime involving moral turpitude. Go ahead. But that, and like I say, maybe I should be asking the government about this, but I don't see that's how the government's arguing the case. As I understand, the government's only arguing one conviction. Now, maybe if there was a remand, they'd argue two, but at this point, they're only arguing one conviction. Your Honor, the reason why they're only arguing one conviction is because if they don't win on this argument that it's categorically a crime involving moral turpitude, then a remand is necessary to decide whether another subsection was violated. If they don't win on their categorical approach argument, then it's possible that one of the convictions is not a crime involving moral turpitude. But I thought you just said if one conviction did involve moral turpitude, then the petty offense exception would not apply. Is that what you said? Yes. All right, so they don't have to win on the second conviction. Well, they have to win, if they win on one conviction, then the petty offense exception doesn't apply because it's a, I guess you're right, they have to win on both. But with the periodic... If they win on one... You just said that if they win on one conviction, the petty offense exception does not apply. Is that your position? If they only win on one of the two. Then the petty offense exception does or does not apply? Does apply if they are convicted of one charge that is a crime involving moral turpitude, the other one is not. So if we have two convictions for a crime involving moral turpitude, the petty offense exception does not apply. But if there's only one conviction for a CIMT, and the other one is not a crime involving moral turpitude, then the petty offense exception would apply. Why would it apply? Well, first of all, didn't you waive this by not briefing it, number one? And number two, why would it apply even if we took it up? I think the most important question that needs to be answered is whether or not the false reporting statute in Nebraska is categorically a crime involving moral turpitude. That wasn't my question, though. Can you address the question? Is the petty offense exception argument waived because you didn't brief it? And number two, if it's not waived, why would it apply in the scenario that you're describing with only one qualifying conviction? I believe that in light of the periodic decision, it's a new case that came out after briefing in this case that addresses a situation where there's an attempted act, or it's a conviction, but it doesn't label exactly which subsection the person violated. And this court found that without a more precedential decision, they couldn't speculate as to which subsection the petitioner or respondent in that case violated, and that it's their burden, the petitioner's burden, to show which exact subsection they violated. Now the issue that's raised there is that when an immigration judge pre-termits an application for cancellation or removal for non-permanent residents, they don't necessarily give the clear the record as to what exact subsection they violated. And so my second issue in this matter is that I believe in light of the period decision that something needs to be done to inform or correct the record at the stage where the immigration judge pre-termits the subsection they violated, then they need to be given an opportunity to clear the record. And that clearly was not the case. If you're at the immigration court level and the immigration judge pre-termits your application for relief, you don't get an opportunity to supplement the record, and also you don't get an opportunity at the BIA level to add more documents to the record. So I believe that in light of that decision, it's an issue of first impression, and I believe that something needs to be done. If it's indeed their burden to show which subsection they violated, they'd be given the opportunity to clear the record at the base level where the immigration judge pre-termits the application. You're into your rebuttal time. Would you like to save any for rebuttal? Yes, Your Honor. Thank you. Very well. Mr. Loveland, we'll hear from you. Good morning, Your Honors. Dan Loveland on behalf of the United States. Judge Collin, Judge Molloy, Judge Shepard, may it please this court. The only issue on appeal today is whether Adam A. Hernandez has met his burden to show that he is eligible for the discretionary relief cancellation of removal. And I'd like to make two preliminary points, and then I'd like to address the so-called petty offense exception, whether it applies, which was the of Judges Collin's and Molloy's questions. So first, Adam A. Hernandez needs to be convicted of only one crime involving moral turpitude. That's clear under the statute's text. That's clear in cases that this court has written. The Miranda-Romero opinion is one example. It's an offense. That's what 1229B1 says. It's an offense. And then it lists, cross-references, three other statutory provisions. And second, Adam A. Hernandez can't meet his burden of that he is the requisite good moral character under 8 U.S.C. 1229B1B. And that's because of his criminal conviction history. Adam A. Hernandez has two convictions for DUIs. He also has two convictions for false statements under Nebraska law. Now, in terms of what's in dispute, what's not in dispute is that one of those convictions, and both convictions were guilty pleas in the year 2009. I'll cite you to the administrative record at 129 and 125 and then again at 121. But one of those convictions is for 289071A under the Nebraska Code. The other conviction, the record is not clear as to which subsection of 28907 it falls under. The government's position is that 289071A is clearly a crime involving moral turpitude. But further, the Pareto opinion that was cited in the government's recent 28J letter shows just how significant the burden is on the alien in the cancellation removal context. That opinion dealt with Nebraska's criminal impersonation statute. And the opinion went through and said the record was not clear as to which subsection of that divisible statute the alien petitioner was convicted under. And for that reason, because the court found that some of the conduct criminalized by that statute was turpitudinous and some was not, the petitioner's application for review was denied. Now, in terms of the petty offense exception. Well, before you get to that, what do you say about Bobadilla and why that case doesn't . . . Absolutely. Some say why that case doesn't mean that a scenario like the one at issue in that case if covered by 1A would be insufficient to qualify. Absolutely. So I think Bobadilla is distinguishable for three separate reasons. What was critical to Judge Loken's majority opinion in the Bobadilla case was the issue of intent. Judge Loken's opinion focused very heavily on the fact that the statute at issue in that case had the obstruction of justice intent standard, which Judge Loken found to be very amorphous and vague and not typical of the types of intent that you see often in crimes that are found to be turpitudinous. Second, the burden in that case was on the government. The issue in that case was removability in the first instance. The issue in this case is in the cancellation of removal context. The burden for each and every element is on the alien to show that they are in fact eligible for cancellation of removal. Why would Bobadilla have lost if the burden were on him? I think that what's clear from Judge Loken's majority opinion is he cites the burden as being significant. I understand that once we're in the crime involving moral turpitude context, we're looking at the law at issue. I do think the burden is significant, especially in light of the Pareto. I know that we're dealing specifically with 28907 1A, but the alien has the burden to show that each subsection of 28907 in this case . . . No, but that's not the issue if you're under 1A, so let's not divert to us . . . Absolutely, Your Honor. . . . irrelevant point. What I'd say is that in Bobadilla, the analysis relied heavily, I would submit to this court, on the burden being on the government instead of the alien. But the third issue . . . It's just a legal issue. I'm not following that, but go ahead. I understand, Your Honor. My reading of the case is just that it was significant to the court. Well, it says that, but how would we write an opinion saying Bobadilla would have lost if the burden were on him if it's just a legal issue? Understood, Your Honor. All right, well, then what's the third point? The third issue is the breadth of conduct. Judge Loken was concerned about the scope of the conduct, and this is related to the intent and issue. Now, 28907 1A, the Supreme Court, in the Ewing opinion, the Nebraska Supreme Court, in 1985 held that the mens rea requirement is specific intent. In 1994, the Nebraska legislator added a materiality requirement to that statute. So the mens rea in the 28907 1A is a very high bar. You have to have the specific intent to knowingly furnish materially false information to a police officer. And the specific intent relates to either to instigate the investigation of a new criminal matter or to impede the ongoing investigation of a criminal matter. And that is much more significant of a mens rea requirement in Bobadilla. That seems to be the same as your first point. So, yes, Your Honor. Getting to the breadth of conduct, what Judge Loken— One and three are the same. You're really saying the difference is intent to obstruct justice is different than intent to impede an investigation? I think that's true. And just to touch on the breadth of conduct briefly, Your Honor, Judge Loken described a situation where someone could potentially give a false name to a police officer and then immediately sort of retract and say, no, my name is actually— I think that the 28907 1A language makes clear that it's not just casually giving a false name to a police officer. It's not an amorphous standard. If you were to be convicted, a false name could, the government concedes, be a type of materially false information that's proffered to a police officer. But in that instance, it would have to be with a specific intent to impede a criminal investigation. Well, let's say you get pulled over and you give a false name so they can't pursue you for violating the immigration criminal statutes. The criminal immigration statutes? Yeah. If you proffer a false name with a specific intent to deceive a peace officer and you know about the ongoing criminal matter, I would say that that—I would submit that that could violate 28907 1A. I would also point this court to the Villatoro opinion and its distinguishing of the Bobadilla opinion and footnote 5 of the Villatoro opinion. That opinion focuses on, again, the intent requirement being at issue and how Bobadilla's intent being obstruction of justice, which is not typical of what you find in turpitudinous conduct, crimes that are found to involve moral turpitude. If I could just briefly address the so-called petty offense exception. Yeah. Sure. You have eight minutes. Sure. Well, I'll turn to that quickly. So it wasn't raised in the opening brief, Your Honor, and you're correct that we only sort of noted it in a footnote that some Eighth Circuit cases suggest that the offense must be a year or less. Now, I think it's important to talk about the statutory framework, and I would just cite—and this wasn't cited in our brief because, again, it wasn't raised in the petitioner's opening brief—the Andrade Zamora case, 814 F. 3rd 945, squarely forecloses this argument. So if you look at the statutory framework, 1229 B. 1c says you can't be convicted of an offense listed under three different subsections. The subsections are 1182 A, 1227 A. 2, and 1227 A. 3. 1182 A and 1227 A. 2 both say crime involving moral turpitude. 1182 A says the conviction has to be for over a year. 1227 A. 2 says the conviction is for a year, at least a year. And what the Andrade Zamora case makes clear is that when 1229 B. 1c is cross-referencing those offenses listed under is the language, it's only cross-referencing the offenses. It's not incorporating by reference the rest of the immigration provisions at issue. Otherwise, it would be nonsensical. Well, what does 1182 apply to? What is the purpose of 1182? So 1182, the purpose of it is in a more general immigration context. Same with 1227 A. 2. They both use the phrase crime involving moral turpitude. However, what I think the Andrade Zamora case, and again, this wasn't brief, I just wanted to note it for your honor. The Andrade Zamora case makes clear that the IJ and the BIA here both cited both provisions as crimes involving moral turpitude. Second, the 1227 A. 2 has a requirement in the immigration context for determining removability in the first instance, which is why you only incorporate by reference the offenses listed under, that it must be within five years of date of admission. That's another argument that's raised first in the reply brief. That's straightforwardly foreclosed by the Andrade Zamora opinion, and again, that's 814 F. 3rd, 945. When 1229 B1C incorporates by reference those three provisions, it's saying only the offense conduct listed there. Not the rest of the immigration provisions that have to do with removability in the first instance. So I think that that hopefully addresses your honor's concern on that point. If the 1182 exception did apply, does the statute that has as its maximum penalty one year fall within the petty exception? I wouldn't concede that it applies, because I think that the government first- Well, the question wasn't whether it applies, the question was assuming it does apply. Yes, Judge Collin, thank you. Would this be a petty offense if it's only punishable by a year? It's only punishable by a year. If 1182A were the only provision that applies, and if this court found further that the petty offense exception existed, which hasn't been found in this court's case law that I've seen, then yes. But it doesn't apply, and 1227A2 makes clear that it's a crime of one year, at least one year. So I think, first of all, it was waived by not being argued in the opening brief, and second, I think it's foreclosed by the Andrade Zamora opinion. What do you mean when you say our cases haven't said that it applies? I mean that- That apply. So I think the open issue, your honor, as I read the Andrade Zamora opinion, is offense conduct listed under is the language from 1229B1C. And Andrade Zamora says you don't incorporate the other sort of immigration characteristics. I think it's an open question, I think there are cases that suggest both ways. There's some that mention at least a year requirement, some that don't mention it. It's an open question whether you're required to have a conviction of at least one year max penalty. And this isn't the case that needs to decide that, because this Nebraska law is punishable by at least a year. Andrade Zamora doesn't, my reading of Andrade Zamora is that it doesn't squarely address that issue. But what's clear is that within five years and other requirements of those statutes are not incorporated by 1229B1C. I'd like to address another point. It's also a independent and sufficient basis for this court to affirm on the basis that Adam A. Hernandez can't meet the requisite good showing of good moral character under 1229B1B. Now I'd submit the BIA's analysis on this point is not as thorough as the immigration judge's analysis on this point. But the BIA cited both B1B and B1C on page three of the administrative record for reasons why Adam A. Hernandez was not eligible for discretionary relief. And the immigration judge went further and said that the crime for which he was convicted under 289071A rendered him ineligible both because it was a crime involving moral turpitude. And because it meant that he couldn't meet the requisite finding of good moral character. So in the ten years preceding his application for cancellation of removal, Adam A. Hernandez was twice convicted of DUI and twice convicted of false statements. One of those convictions which we've talked about is 289071A, another one is a general provision of 28907. So first, I also would point this court to the Molana opinion. Now the Molana opinion was in a different context. But in terms of defining fraud, the Molana opinion looked to the dictionary and looked to common law principles and said fraud is involving trickery, deceit, especially when it involves a misrepresentation, the act of looting. I'd submit that that's easily at issue in the 289071A context. You're intentionally, with specific intent, knowingly furnishing false information to a peace officer with the intent that they act on that information. Either by impeding an ongoing criminal investigation or instigating a new one. Now, in terms of whether the harm is economical or not, I don't find that persuasive in the context of wasting government resources and potentially creating a public safety issue. What case were you just citing? The Molana case, your honor. It was cited in our brief, and I can give you the- It was cited in your brief? Yes, your honor. 803 F3rd 923. Molana versus Lynch? Yeah, okay. Yes, your honor. I apologize if my pronunciation wasn't clear. I'd like to also briefly address the significance of the Pareto opinion. And it's worth talking about what some of the other conduct that's criminalized by 28907. Again, Adam A Hernandez has two convictions under 28907. One's 1A, we've talked about that. The other is 28907 generally. Subsection B criminalizes knowingly furnishing false information regarding the need for assistance to emergency medical service providers. Subsection C is knowingly furnishing false information regarding the need for assistance to the fire department or fire department personnel. And subsection D deals with bomb threats. It's knowingly furnishing false information regarding the location of an explosive, either in a building or on property. Adam A Hernandez, I would submit under this court's Pareto opinion, has to show that each one of those offenses is not a crime involving moral turpitude. Thank you, your honors. Thank you for your argument. Mr. Weinstein, we'll hear from you in rebuttal. Thank you, your honors. The bottom line in this case is that the government needs to convince the court that the intent to impede a criminal investigation is somehow different than the intent to obstruct justice in the Boveda case. And I don't believe they can. We don't even need to get to the petty offense argument and waste the court's time in figuring that out. I believe that this case is decided on the fact that the false reporting statute is analogous to the realistic probability scenario in the Boveda decision. Because the same realistic probability scenarios that exist in the case at bar existed in the Boveda decision. And I believe that 1A of the false reporting statute is not a crime involving moral turpitude. And I'd go further into saying that there's a realistic probability scenario for each one of the subsections. However, the government, nor the Board of Immigration Appeals, nor the immigration judge did a thoughtful analysis for each of the subsections when they're required to do so. If this is indeed a divisible statute. In order for the government to win, they need to show that somehow this fraud of misleading the government or the police is somehow analogous to the cases that they cited, Viatoro-Beholder and Kawashima-Beholder, where there's clearly an intent to injure someone in the Viatoro-Beholder. And an intent to gain a pecuniary benefit in the Kawashima-Beholder case. I don't know if you noticed, but your time has expired. Thank you for your argument. Thank you. The case is submitted and the court will file an opinion in due course. Counsel are excused.